William Novotny (#004239)
william.novotny@mwmf.com
Michael J. Plati (#016705)
mike.plati@mwmf.com
MARISCAL, WEEKS, MCINTYRE
     & FRIEDLANDER, P.A.
2901 North Central Avenue
Suite 200
Phoenix, Arizona 85012-2705
Phone: (602) 285-5000
Fax: (602) 285-5100

Attorneys for Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| CHARLES AND CHRISTA CROWELL, | Case No.  4:09-bk-07333-JMM |
| Debtors. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Indenture Trustee for New Century Alternative Mortgage Loan Trust 2006-ALT1, | Adversary No. 4:10-ap-00156-JMM |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| J&J and A&A, L.L.C., an Arizona limited liability company; CHARLES and CHRISTA CROWELL, husband and wife, | |
| Defendants. | |

Plaintiff Deutsche Bank National Trust Company, as Indenture Trustee for New Century Alternative Mortgage Loan Trust 2006-ALT1 ("Plaintiff"), for its Complaint against Defendants J&J and A&A, L.L.C. ("J&J") and Charles and Christa Crowell (the "Debtors" or "Crowells"), alleges as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff is the trustee of a trust.

2.      Upon information and belief, J&J is an Arizona limited liability company authorized to do business in Arizona.

3.      Upon information and belief, the Crowells are husband and wife who reside in Cochise County, Arizona.

4.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure. This adversary proceeding arises in or is related to the proceedings commenced on April 14, 2009 by the Debtors under Chapter 11 of the Bankruptcy Code.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

6.      The real property that is the subject of this proceeding is located in Cochise County, Arizona.

7.      In March 2006, the Crowells borrowed $417,000.00 from New Century Mortgage Corporation ("Loan").   The loan was evidenced by a promissory note ("Note") and secured by a Deed of Trust ("DOT I") on real property located at the south end of Richards Road in Hereford, Arizona (the "Property"). [Exhibit A].

8.      DOT I, however, was not recorded until September 13, 2007.  [Id.].

9.      During the interim, on January 5, 2007, J&J recorded a deed of trust granted by the Crowells on the Property and on three other real estate parcels to secure a $1,090,000.00 loan (the "J&J DOT").   The three other parcels included a parcel with a 1358 square foot residence ("Lot 10"), 2.31 acres of vacant land (the "2.31 Acre Parcel"), and 21.5 acres of vacant land (the "21.5 Acre Tract"). [Exhibit B].

10.      Plaintiff is now the holder of the Note and the beneficiary under DOT I. [Exhibit C].

-2-

11.	The Crowells have defaulted on the Loan.

12.	The loan underlying the J&J DOT is also apparently in default.	J&J has recorded a Notice of Trustee's Sale on the Property, Lot 10, and the 21.5 Acre Tract.

13.	A deed in lieu of foreclosure in favor of J&J has been recorded with respect to the 2.31 Acre Parcel.

14.	J&J's trustee's sale has been postponed several times, is currently scheduled for February 2, 2009 at 10:00 a.m. (the "Scheduled Sale"), and is stayed by these bankruptcy proceedings.

## COUNT ONE
### (Declaratory Relief: Lien Priority)

15.	Plaintiff reasserts the allegations set forth above as if fully repeated herein.

16.	Upon information and belief, J&J was actually aware and had received notice of DOT I when the J&J DOT was recorded.

17.	A justiciable dispute exists as to whether DOT I is a senior position lien on the Property vis-à-vis the J&J DOT.

18.	The Court should declare that DOT I constitutes a duly perfected first position lien on the Property vis-à-vis the J&J DOT.

## COUNT TWO
### (Declaratory Relief: Lien Priority)

19.	Plaintiff reasserts the allegations set forth above as if fully repeated herein.

20.	The J&J DOT contains a term which requires J&J to release the Property from the J&J DOT "upon a principal reduction" payment of $190,000.00.

21.	Upon information and belief, the Crowells have provided and/or tendered to J&J the equivalent of $190,000.00 in principal reduction payments.

22.	Upon information and belief, J&J has refused to release the Property from the J&J DOT.

23. A justiciable dispute exists as to whether the $190,000.00 release provision in the J&J DOT remains operative and mandates a release of the Property from the J&J DOT.

24. The Court should declare that: a) J&J is obligated to release the Property from the J&J DOT due to the Crowells' previous payment of $190,000.00 for principal reduction on J&J's underlying loan; or b) J&J must release the J&J DOT in the event of such a payment.

WHEREFORE, Plaintiff prays that the Court enter judgment against J&J and the Crowells as follows:

A. Declaring that Plaintiff holds a senior lien position on the Property vis-à-vis the J&J DOT;

B. Alternatively, declaring that J&J must release the Property from the J&J DOT due to a previous $190,000.00 principal payment made to J&J;

C. Alternatively, declaring that J&J must release the Property from the J&J DOT in the event of a $190,000.00 principal payment to J&J;

D. Awarding Deutsche Bank its costs incurred in this Adversary Complaint; and

E. Any other relief the Court deems just and proper.

**DATED** this 25th day of January, 2010.

MARISCAL, WEEKS, MCINTYRE
& FRIEDLANDER, P.A.

WN/4239

By: _____
William Novotny
Michael J. Plati
2901 N. Central Avenue, Suite 200
Phoenix, Arizona 85012-2705
Attorneys for Plaintiff

U:\ATTORNEYS\TJT\Fidelity - 11754\Deutsche Bank adv. J&J and A&A, LLC - 275\Pleadings\Complaint.doc

**EXHIBIT A**

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117



FEE # 070930222
OFFICIAL RECORDS
COCHISE COUNTY
DATE          HOUR
09/13/07     12
REQUEST     OF
US RECORDINGS
CHRISTINE RHODES-RECORDER
FEE :    20.00    PAGES : 15

Prepared By:
Home123 Corporation
13100 Northwest Freeway, Suite 200
Houston, TX 77040

——————————————[Space Above This Line For Recording Data]——————————————

Loan No: 397-10445922

# DEED OF TRUST

MIN100431900103528434

Record 1st

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 14, 2006
together with all Riders to this document.
(B) "Borrower" is   CHRISTA K. CROWELL and CHARLES J. CROWELL, Wife and
Husband

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 2977 CAMINO
LAS PALMERAS, SIERRA VISTA, AZ 85650
(C) "Lender" is NEW CENTURY MORTGAGE CORPORATION, a California Corporation.

Lender is a Corporation
organized and existing under the laws of California

397-10445922

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003  1/01 (rev. 6/02)

-6A(AZ) (0308)
Page 1 of 15    Initials: CKC  cqc
VMP MORTGAGE FORMS - (800)521-7291

070930222

Lender's mailing address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

(D) "Trustee" is First American Title Insurance Company

, Trustee's mailing address is

1 First American Way, Santa Ana, CA 92707

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 14, 2006
The Note states that Borrower owes Lender Four Hundred Seventeen Thousand And 00/100
Dollars

(U.S. $417,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]:

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

397-10445922

-6A(AZ) (0304)

Page 2 of 15

Initials

Form 3003 1/01 (rev. 6/02)

070930222

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                  of Cochise                  :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
LOT 78, CANYON DE FLORES, PHASE 2A, ACCORDING TO BOOK 14 OF MAPS, PAGE 85, RECORDS OF COHISE COUNTY, ARIZONA.

Parcel ID Number: 105-03-350                        which currently has the address of
2977 CAMINO LAS PALMERAS                                              [Street]
SIERRA VISTA                              [City], Arizona 85650        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
397-10445922

Initials: CKC CTC

-6A(AZ) (0308)                        Page 3 of 15                        Form 3003 1/01 (rev. 6/02)

070930222

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

397-10445922

-6A(AZ) (0308)     Page 4 of 15     Form 3003 1/01 (rev. 6/02)

070930222

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

397-10445922

Ⓜ -6A(AZ) (0204)                     Page 5 of 15                     Form 3003  1/01  (rev. 6/02)

070930222

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

397-10445922

-GA(AZ) (0306)                                     Page 6 of 15                    Initials: OKC  CTC

                                                                                   Form 3003   1/01  (rev. 6/02)

070930222

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

397-10445922

Initials _CKC_ _CTC_    Form 3003   1/01 (rev. 6/02)

070930222

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

397-10445922

**-GA(AZ)** (0306)     Page 8 of 15     Initials _____   Form 3003 1/01 (rev. 6/02)

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

397-10445922

-6A(AZ) (0208)   Page 9 of 15   Form 3003   1/01 (rev. 6/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

397-10445922

-6A(AZ) (0308)          Page 10 of 15          Form 3003 1/01 (rev. 6/02)

070930222

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

397-10445922

(0001) -6A(AZ) (0300)

Page 11 of 18

Initials ___

Form 3003 1/01 (rev. 6/02)

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow ··· ·· ·· ·se to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

397-10445922

-GA(AZ) (0306)

Form 3003-1/01 (rev. G/02)

070930222

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

397-10445922

-6A(AZ) (0208)     Page 13 of 18     Form 3003   1/01 (rev. 6/02)

070930222

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                    CHRISTA K. CROWELL          -Borrower

_____          _____ (Seal)
                                    CHARLES J. CROWELL          -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                          -Borrower

397-10445922

-6A(AZ) (0309)          Page 14 of 15          Form 3003  1/01  (rev. 6/02)

070930222

STATE OF ARIZONA, Cochise        County ss:

The foregoing instrument was acknowledged before me this 14th day of March, 2006

by   CHRISTA K. CROWELL and CHARLES J. CROWELL, Wife and Husband

My Commission Expires: 1/13/2009

_Nancy J. Stafford_
Notary Public

Nancy J. Stafford

NANCY J. STAFFORD
Notary Public, State of Arizona
Cochise County
My Commission Expires
January 13, 2009

397-10445922

VMP®-GA(AZ) (0303)

Page 15 of 15

Form 3003 1/01 (rev. 6/02)

U41344903-01T016
DEED OF TRUST
LOAN# 397-10445922
US Recordings

070930222

# EXHIBIT B

at the request of Pioneer Title Agency, Inc.

when recorded mail to
PIONEER TITLE AGENCY INC.
ACCOUNT SERVICING, ACCT. 516877
PO BOX 1900
SIERRA VISTA, AZ 85636

00516877-CB



FEE # 070100680
OFFICIAL RECORDS
COCHISE COUNTY
DATE          HOUR
01/05/07        4
      REQUEST    OF
PIONEER TITLE AGENCY
CHRISTINE RHODES-RECORDER
FEE :      20.00    PAGES :12

**CAPTION HEADING: <u>DEED OF TRUST</u>**

THIS DOCUMENT IS BEING RE-RECORDED TO CORRECT THE TRUSTOR HEREIN.

DO NOT REMOVE

THIS IS PART OF THE OFFICIAL DOCUMENT

(THIS FORM IS FOR RECORDER'S USE ONLY)

070100659

at the request of Pioneer Title Agency, Inc.

when recorded mail to:

Pioneer Title Agency, Inc.
Loan Servicing Department
P. O. Box 1900
Sierra Vista, AZ 85636

JUL 12 2006
FEE # 060726479
OFFICIAL RECORDS
COCHISE COUNTY
DATE          HOUR
07/12/06      12
                 OF
REQUEST
PIONEER TITLE AGENCY
CHRISTINE RHODES-RECORDER
FEE :   15.00   PAGES :   10

00516877-CB    This document is being re-recorded to correct release provision.

# DEED OF TRUST AND ASSIGNMENT OF RENTS

Date:  June 23, 2006

JUL 26 2006
12 pm 10 p 2

**TRUSTOR:**
RAMSEY RESERVE, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY; AND
CHARLES J. CROWELL AND CHRISTA K. CROWELL, HUSBAND AND WIFE**
whose mailing address is 2977 CAMINO LAS PALMERAS, SIERRA VISTA, AZ 85650
*as to Parcels I-XI    **as to Parcels XII and XIII
**TRUSTEE:**
Pioneer Title Agency, Inc., an Arizona corporation

whose mailing address is P. O. Box 1900 Sierra Vista, Arizona 85636-1900

**BENEFICIARY:**
J & J AND A & A, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY

whose mailing address is 1649 DRIFTWOOD, SIERRA VISTA, AZ 85635
                         1801 Camino Rancho
Property situated in the County of Cochise, State of Arizona, as described as follows:

See Exhibit A attached hereto and made a part hereof.

Together with all buildings, improvements and fixtures thereon or hereinafter erected thereon,
Street address if any, or identifiable location of this property:

**SOUTH END OF RICHARDS RD., HEREFORD, AZ 85615**

THIS DEED OF TRUST, made on the above date by, between and among the TRUSTOR, TRUSTEE and
BENEFICIARY above named.

WITNESSETH: That Trustor hereby irrevocably grants, conveys, transfers and assigns to the Trustee in Trust,
with Power of Sale, the above described real property (the Trust Property), together with leases, rents, issues,
profits, or income therefrom (all of which are hereinafter called "property income"): SUBJECT, however, to
the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such
property income:

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way,
encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

FOR THE PURPOSE OF SECURING:

A. Payment of the indebtedness in the principal sum of $1,090,000.00 evidenced by a Promissory Note or
   Notes of even date herewith, and any extension or renewal thereof, executed by Trustor in favor of
   Beneficiary or order.
B. Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his
   successors or assigns, when evidenced by a Promissory Note or Notes reciting that they are secured by a
   Deed of Trust.
C. Performance of each agreement of Trustor herein contained.
D. At any time Trustor is not in default under the terms of the encumbrance created herein, Trustor shall be
   entitled to the release of a minimum of 1 acre(s) of subject property, with a release price of $50,000.00 per
   acre after subdivision is completed.
E. UPON A PRINCIPAL REDUCTION PAYMENT OF $190,000.00, THE BENEFICIARY HEREIN
   AGREES TO RELEASE 2977 CAMINO LAS PALMERAS AND LOTS 10 AND XI, HOLIDAY
   ESTATES/ Holiday at PDS-Phase 2 and that portion of the South half of Section 2
   Township 23 South, Range 21 East of the Gila and Salt River Base and Meridian,
   Cochise County.

070100680

060728143                                      060726479

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

1. To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violations of law; and to do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2. To provide, maintain, and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be relea ed to Trustor. Such application or release shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by Beneficiary or Trustee to foreclose this Deed of Trust.

4. To pay, before delinquent, all taxes and assessments affecting said property; when due, all encumbrances, charges, and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees, and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and full Reconveyance, and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest, or compromise any encumbrance, ch-rge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel, and pay his reasonable fees.

5. To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from date of expenditure at the same rate as is provided for in the note or notes secured by this Deed of Trust or at the legal rate if it secures a contract or contracts other than a promissory note or notes. Any amounts so paid by Beneficiary or Trustee shall become a part of the debt secured by this Deed of Trust and a lien on said premises or immediately due and payable at option of Beneficiary or Trustee.

**IT IS MUTUALLY AGREED:**

6. That any award of damages in connection with any condemnation or any such taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefor and the ownership thereof subject to this Deed of Trust), and upon receipt of such moneys Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7. That time is of the essence of this Deed of Trust, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8. That at any time or from time to time, and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and said note(s) for endorsement, and without liability therefor, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, and without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto, and without the necessity that any sum representing the value or any portion thereof of the property affected by the Trustee's action be credited on the indebtedness, the Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or either, of any map or plat of the property or any part thereof; (c) join in granting any easement thereon; (d) join in or consent to any extension agreement or any agreement subordinating the lien, encumbrance, or charge hereof.

9. That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said note(s) to Trustee for cancellation, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the

070100660

060728143          060726479

truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

10. That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power, and authority, during the continuance of this Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable. Upon any such default, Beneficiary may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such property income, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such property income, and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

11. That upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust, said note(s), and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale in the manner required by law, and after the lapse of such time as may then be required by law, subject to the statutory rights of reinstatement, the Trustee shall sell, in the manner required by law, said property at public auction at the time and place fixed by it in said notice of Trustee's sale to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone or continue the sale by giving notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, expressed or implied. Any persons, including Trustor, Trustee, or Beneficiary, may purchase at such sale.

After deducting all costs, fees, and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale to payment of all sums then secured hereby and all other sums due under the terms hereof, with accrued interest; and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder.

In lieu of sale pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property. Beneficiary shall also have all other rights and remedies available him hereunder and at law or in equity. All rights and remedies shall be cumulative.

12. That Beneficiary may appoint a successor Trustee in the manner prescribed by law. A successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers, and duties. Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor.

13. That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assignees. The term Beneficiary shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

14. That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to him at his address hereinbefore set forth.

060728143    070100680    060726479

Trustor
RAMSEY RESERVE, L.L.C.

_[signature]_

CHARLES J. CROWELL, MANAGER

Trustor

_[signature]_

CHARLES J. CROWELL, INDIVIDUALLY

_[signature]_ Christa K. Crowell

CHRISTA K. CROWELL, INDIVIDUALLY

STATE OF ARIZONA

County of Cochise            } ss

_[Notary seal: OFFICIAL SEAL / NOTARY PUBLIC / STATE OF ARIZONA / COCHISE COUNTY / C M BROWN / MY COMM. EXPIRES MARCH 31, 2009]_

This instrument was acknowledged before me this _10_ day of _July_, _2006_ by Charles J. Crowell, Manager of RAMSEY RESERVE, L.L.C.

_[signature]_

Notary Public

My commission expires: _____

ACCEPTED AND APPROVED

Beneficiary

J & J AND A & A, L.L.C.

_[signature]_ James DeJon Menzie

JAMES P. DOUGLASS, MANAGER

Beneficiary

STATE OF ARIZONA

COUNTY OF COCHISE

_[Notary seal: OFFICIAL SEAL / NOTARY PUBLIC / STATE OF ARIZONA / COCHISE COUNTY / C M BROWN / MY COMM. EXPIRES MARCH 31, 2009]_

This instrument was acknowledged before me this ___ December 2006 by Charles J. Crowell and Christa K. Crowell

STATE OF ARIZONA

County of Cochise            } ss

_[Notary seal: OFFICIAL SEAL / NOTARY PUBLIC / STATE OF ARIZONA / COCHISE COUNTY / C M BROWN / MY COMM. EXPIRES MARCH 31, 2009]_

This instrument was acknowledged before me this _20_ day of _June_, _2006_ by JAMES P. DOUGLASS, MANAGER OF J & J AND A & A, L.L.C.

_[signature]_

Notary Public

My commission expires: _____

_[Recorder seal]_

FEE # 060728143
OFFICIAL RECORDS
COCHISE COUNTY
DATE            HOUR
07/26/06        12
REQUEST         OF
PIONEER TITLE AGENCY
CHRISTINE RHODES-RECORDER
FEE :    15.00    PAGES :  10

060728143        070100680        060726479

## LEGAL DESCRIPTION
## DEED OF TRUST

That portion of the Southwest quarter of Section 1, Township 23 South, Range 20 East of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at a found BLM capped pipe at the Southwest corner of Section 1, Township 23 South, Range 20 East;

thence along the South line of the above referenced Section 1, North 89°56'19" East, for a distance of 1320.27 feet to a found BLM capped pipe at the POINT OF BEGINNING;

thence leaving the South line of Section 1, North 00°00'01" West, for a distance of 1144.46 feet to a set ½" rebar with surveyor's cap RLS 40916 at the Northwest corner of the subject tract;

thence along a new division line, North 89°56'19" East, for a distance of 838.94 feet to a set ½" rebar with surveyor's cap RLS 40916;

thence South 65°20'50" East, for a distance of 237.49 feet to a found ½" rebar with surveyor's cap RLS 14181;

thence along the Easterly line of the subject tract, South 00°06'27" East, for a distance of 384.94 feet to a found ½" rebar with surveyor's cap RLS 14181;

thence North 89°55'26" West, for a distance of 394.37 feet to a found ½" rebar with surveyor's cap RLS 28737;

thence South 00°01'07" East, for a distance of 661.17 feet to a found ½" rebar in the South line of Section 1;

thence along the South line of Section 1, South 89°56'19" West, for a distance of 661.35 feet to the POINT OF BEGINNING.

060728143    070100680    060726479

**PARCEL I:**

That portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at the East quarter corner of said Section 2;
    thence South 89° 59' 18" West coincident with the East-West Mid-Section line of said Section 2 a distance of 674.16 feet;
    thence South 00° 21'49" East a distance of 1111.26 feet;
    thence North 89° 47' 12" West a distance of 2583.17 feet to the POINT OF BEGINNING;
    thence South 00° 18' 53" East a distance of 199.22 feet-measured (208.71 feet-record) to a point on the North line of the Southeast quarter of the Southwest quarter of said Section 2;
    thence South 89° 56' 05" West coincident with the North line of the Southeast quarter of the Southwest quarter of said Section 2 a distance of 500.98 feet;
    thence South 00° 18' 53" West a distance of 201.65 feet-measured (208.71 feet-record);
    thence South 89° 47' 12" East a distance of 501.00 feet to the POINT OF BEGINNING.

EXCEPT any portion lying with the following described Parcel:

COMMENCING at the East corner of Section 2;
    thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;
    thence South 00° 21' 49" East a distance of 1111.26 feet;
    thence North 89° 47' 12" West a distance of 2768.17 feet to the POINT OF BEGINNING;
    thence South 00° 18' 53" East a distance of 62.00 feet;
    thence North 89° 47' 12" West a distance of 48.00 feet;
    thence North 00° 18' 53" West a distance of 62.00 feet;
    thence South 89° 47' 12" East a distance of 48.00 feet to the POINT OF BEGINNING.


**PARCEL II:**

An undivided ¼ interest in and to:

A 48.00 foot by 62.00 foot wide water tank, water lines and solar panels over that portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows;

COMMENCING at the East ¼ corner of Section 2;
    thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;
    thence South 00° 21' 49" East a distance of 1111.26 feet;
    thence North 89° 47' 12" West a distance of 2768.17 feet to the POINT OF BEGINNING;
    thence South 00° 18' 53" East a distance of 62.00 feet;
    thence North 89° 47' 12" West a distance of 48.00 feet;
    thence North 00° 18' 53" West a distance of 62.00 feet;
    thence South 89° 47' 12" East a distance of 48.00 feet to the POINT OF BEGINNING.


**PARCEL III:**

A 40.00 foot wide easement for water lines over that portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows;

COMMENCING at the East quarter corner of Section 2;
    thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;

060728143     070100680     060726479

thence South 00° 21' 49" East a distance of 1111.26 feet;
thence North 89° 47' 12" West a distance of 2035.57 feet to the POINT OF BEGINNING;
thence South 00° 19' 18" East a distance of 40.00 feet;
thence North 89° 47' 12" West a distance of 547.60 feet;
thence North 00° 18' 53" West a distance of 40.00 feet;
thence South 89° 47' 12" East a distance of 547.60 feet to the POINT OF BEGINNING.

## PARCEL IV:

An easement for ingress, egress and utilities over the South 20 feet and the East 40 feet of
the following described parcel:

That portion of the South half of Section 2, Township 23 South, Range 20 East of the Gila
and Salt River Base and Meridian, Cochise County, Arizona, more particularly described
as follows:

COMMENCING at the East ¼ corner of section 2;

thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2
a distance of 674.16 feet;
thence South 00° 21' 49" East a distance of 1111.26 feet;
thence North 89° 47' 12" West a distance of 1719.07 feet to the POINT OF BEGINNING;
thence South 00° 18' 53" East a distance of 197.72
thence North 89° 31' 21" West a distance of 285.60 feet to the C-S 1/16th corner;
thence South 89° 56' 05" West a distance of 30.90;
thence North 00° 19' 18" West a distance of 196.56 feet;
thence South 89° 47' 12" East a distance of 316.50 feet to the POINT OF BEGINNING.

## PARCEL V:

An easement for ingress, egress and utilities over the South 20 feet of the following
described parcel:

That portion of the South half of Section 2, Township 23 South, Range 20 East of the Gila
and Salt River Base and Meridian, Cochise County, Arizona, more particularly described
as follows:

COMMENCING at the East quarter corner of Section 2;

thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2
a distance of 674.16 feet;
thence South 00° 21' 49" East a distance of 1111.26 feet;
thence North 89° 47' 12" West a distance of 2035.57 feet to the POINT OF BEGINNING;
thence South 00° 19' 18" East a distance of 196.56 feet;
thence South 89° 56' 05" West a distance of 274.61 feet;
thence North 00° 19' 18" West a distance of 197.89 feet;
thence South 89° 47' 12" East a distance of 274.62 feet to the POINT OF BEGINNING.

## PARCEL VI:

An easement for ingress, egress and utilities over the South 20 feet of the following
described parcel:
That portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila
and Salt River Base and Meridian, Cochise County, Arizona, more particularly described
as follows:

COMMENCING at East ¼ corner of Section 2:
thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2
a distance of 674.16 feet;

0728143     070100680     060726479

thence South 00° 21' 49" East a distance of 1111.26 feet;
thence North 89° 47' 12" West a distance of 2310.19 feet to the POINT OF BEGINNING;
thence South 00° 19' 18" East a distance of 197.89 feet;
thence South 89° 56' 05" West a distance of 272.99 feet;
thence North 00° 18' 53" West a distance of 199.22 feet;
thence South 89° 47' 12" East a distance of 272.98 feet to the POINT OF BEGINNING.

## PARCEL VII:

An Easement for water utilities described as follows:

The East 20 feet of the following described property:

The Eastern one half of the West one third of the following described property:

That portion of the Northeast quarter of the Southwest quarter and that portion of the Northwest quarter of the Southeast quarter of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more specifically described as follows:

BEGINNING at Northwest corner of said Northeast quarter of the Southwest quarter;
thence South 89° 57' 46" East a distance of 208.71 feet;
thence South 00° 02' 14" West a distance of 60.00 feet to the TRUE POINT OF BEGINNING;
thence South 89° 57' 46" East a distance of 1505.50 feet;
thence South 00° 18' 53" East a distance of 1044.20 feet;
thence North 89° 45' 59" West a distance of 1505.54 feet;
thence North 00° 18' 53" West a distance of 1039.03 feet to the TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM the following described property:

BEGINNING at the Northwest corner of the Northeast quarter of the Southwest quarter of said Section 2;
thence South 89° 57' 46" East a distance of 208.71 feet;
thence South 00° 02' 14" West a distance of 60.00 feet to the TRUE POINT OF BEGINNING;
thence South 89° 57' 46" East a distance of 501.83 feet;
thence South 00° 18' 53" East a distance of 346.92 feet;
thence North 89° 53' 50" West a distance of 501.84 feet;
thence North 00° 18' 53" West a distance of 346.34 feet to the TRUE POINT OF BEGINNING.

## PARCEL VIII:

A non-exclusive easement for ingress, egress and utilities as created in Deed recorded in Document No. 9701-00151, records of Cochise County, Arizona, over the Northerly 20.00 feet of the following described property:

That portion of the North half of the South half of Section 2, Township 23 South, Range 20 East of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at the East quarter corner of said Section 2;
thence South 89° 59' 18" West, coincident with the East-West mid-section line of said Section 2, a distance of 674.16 feet;
thence South 00° 21' 49" East a distance of 1,111.26 feet;
thence North 89° 47' 12" West a distance of 1,065.77 feet to the Northeast corner of the property herein described and the POINT OF BEGINNING;

060728113      070100060      060726479

thence South 00° 18' 53" East a distance of 200.57 feet measured (208.71 feet record) to a point on the North line of the Southwest quarter of the Southeast quarter of said Section 2; thence North 89° 31' 03" West coincident with the North line of the Southwest quarter of the Southeast quarter of said Section 2, a distance of 653.34 feet;

thence North 00° 18' 53" West a distance of 197.50 feet measured (208.71 feet record) to a point on the North line of that certain property described in instrument recorded in Document No. 9404-09595, records of Cochise County, Arizona;

thence South 89° 47' 12" East a distance of 653.30 feet to the POINT OF BEGINNING;


### PARCEL IX:

A non-exclusive easement for ingress, egress and utilities as created in Deed recorded in Document No. 9701-00151, records of Cochise County, Arizona, over the Westerly 20.00 feet of the following described property:

That portion of the North half of the South half of Section 2, Township 23 South, Range 20 East of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at a point 3,291.84 feet East and 60.00 feet South of the Northwest corner of the Northeast quarter of the Southwest quarter;

thence South 00° 21' 49" East 1,051.21 feet;

thence North 89° 47' 12" West 80.82 feet;

thence North 00° 21' 49" West 1,051.21 feet;

thence North 89° 59' 18" East 79.81 feet to the POINT OF BEGINNING.


### PARCEL X:

A non-exclusive easement for ingress, egress and utilities as created in Deed recorded in Document No. 9701-00151, records of Cochise County, Arizona, over the Northerly 20.00 feet of the following described property:

That portion of the South half of Section 2, Township 23 South, Range 20 East of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at the East quarter corner of said Section 2;

thence South 89° 59' 18" West coincident with the East-West mid-section line of said Section 2, a distance of 674.16 feet;

thence South 00° 21' 49" East a distance of 1,111.26 feet to the POINT OF BEGINNING;

thence South 00° 08' 49" West measured (South 00° 21' 29" East record) a distance of 205.56 feet measured (208.71 feet record) to a point on the North line of the Southeast quarter of the Southeast quarter of said Section 2

thence North 89° 31' 03" West coincident with the North line of the Southeast quarter of the Southeast quarter of said Section 2, a distance of 450.14 feet;

thence North 00° 18' 53" West a distance of 203.46 feet measured (208.71 feet record) to a point on the North line of that certain property described in instrument recorded in Document No. 9404-09595, records of Cochise County, Arizona;

thence South 89° 47' 12" East a distance of 451.77 feet to the POINT OF BEGINNING.


### PARCEL XI:

A non-exclusive easement for ingress, egress and utilities as created in Deed recorded in Document No. 9701-00151, records of Cochise County, Arizona, over the Northerly 20.00 feet of the following described property:

060728113

070100650      060726479

That portion of the South half of Section 2, Township 23 South, Range 20 East of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at the East quarter corner of said Section 2;

thence South 89° 59' 18" West coincident with the East-West mid-section line of said Section 2, a distance of 674.16 feet;

thence South 00° 21' 49" East a distance of 1,111.26 feet;

thence North 89° 47' 12" West a distance of 451.77 feet to the Northeast corner of the property herein described and the POINT OF BEGINNING;

thence South 00° 18' 53" East a distance of 203.46 feet measured (208.71 feet record) to a point on the North line of the Southeast quarter of the Southeast quarter of said Section 2;

thence North 89° 31' 03" West coincident with the North line of the Southeast quarter of the Southeast quarter of said Section 2, a distance of 217.52 feet to the Southeast 1/16 corner;

thence continuing North 8° '31' 03" West coincident with the North line of the Southwest quarter of the Southeast quarter of said Section 2, a distance of 396.51 feet;

thence North 00° 18' 53" West a distance of 200.57 ft measured (208.71 feet record) to a point on the North line of that certain property described in Document No. 9404-09595, records of Cochise County, Arizona;

thence South 89° 47' 12" East a distance of 614.00 feet to the POINT OF BEGINNING.


PARCEL XII:

LOT 78, CANYON DE FLORES, PHASE 2A, ACCORDING TO BOOK 14 OF MAPS, PAGE 85, RECORDS OF COCHISE COUNTY, ARIZONA.


PARCEL XIII:

LOT 10 HOLIDAY AT PUEBLO DEL SOL – PHASE 2, ACCORDING TO BOOK 15 OF MAPS, PAGE 41, RECORDS OF COCHISE COUNTY, ARIZONA AND AS CORRECTED PER AFFIDAVIT OF SCRIVENER'S ERROR RECORDED IN DOCUMENT NO. 0511-44013 AND AS CORRECTED PER AFFIDAVIT OF SCRIVENER'S ERROR RECORDED IN DOCUMENT NO. 0603-08104, RECORDS OF COCHISE COUNTY, ARIZONA;

EXCEPT ALL RESERVATIONS CONTAINED IN DOCUMENT RECORDED IN DOCUMENT NO. 8712-31763, RECORDS OF COCHISE COUNTY, ARIZONA.

060728143

070100650

060726479

PARCEL I:

That portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows:

COMMENCING at the East quarter corner of said Section 2;
 thence South 89° 59' 18" West coincident with the East-West Mid-Section line of said Section 2 a distance of 674.16 feet;
 thence South 00° 21'49" East a distance of 1111.26 feet;
 thence North 89° 47' 12" West a distance of 2583.17 feet to the POINT OF BEGINNING;
 thence South 00° 18' 53" East a distance of 199.22 feet-measured (208.71 feet-record) to a point on the North line of the Southeast quarter of the Southwest quarter of said Section 2;
 thence South 89° 56' 05" West coincident with the North line of the Southeast quarter of the Southwest quarter of said Section 2 a distance of 500.98 feet;
 thence North 00° 18' 53" West a distance of 201.65 feet-measured (208.71 feet-record);
 thence South 89° 47' 12" East a distance of 501.00 feet to the POINT OF BEGINNING.

EXCEPT any portion lying with the following described Parcel:

COMMENCING at the East corner of Section 2;
 thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;
 thence South 00° 21' 49" East a distance of 1111.26 feet;
 thence North 89° 47' 12" West a distance of 2768.17 feet to the POINT OF BEGINNING;
 thence South 00° 18' 53" East a distance of 62.00 feet;
 thence North 89° 47' 12" West a distance of 48.00 feet;
 thence North 00° 18' 53" West a distance of 62.00 feet;
 thence South 89° 47' 12" East a distance of 48.00 feet to the POINT OF BEGINNING.


PARCEL II:

An undivided ¼ interest in and to:

A 48.00 foot by 62.00 foot wide water tank, water lines and solar panels over that portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows;

COMMENCING at the East ¼ corner of Section 2:
 thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;
 thence South 00° 21' 49" East a distance of 1111.26 feet;
 thence North 89° 47' 12" West a distance of 2768.17 feet to the POINT OF BEGINNING;
 thence South 00° 18' 53" East a distance of 62.00 feet;
 thence North 89° 47' 12" West a distance of 48.00 feet;
 thence North 00° 18' 53" West a distance of 62.00 feet;
 thence South 89° 47' 12" East a distance of 48.00 feet to the POINT OF BEGINNING.


PARCEL III:

A 40.00 foot wide easement for water lines over that portion of the South half of Section 2, Township 23 South, Range 20 East, of the Gila and Salt River Base and Meridian, Cochise County, Arizona, more particularly described as follows;

COMMENCING at the East quarter corner of Section 2;
 thence South 89° 59' 18" West coincident with the East-West mid-section line of Section 2 a distance of 674.16 feet;

070100680

# EXHIBIT C

2008-21494
Page 1 of 1
Requested By: FIDELITY NATIONAL TITLE
Christine Rhodes - Recorder
Cochise County, AZ
07-06-2008 12:17 PM Recording Fee $10.00

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
**Michael A. Bosco, Jr.**
**2525 East Camelback Road, Suite 300**
**Phoenix, AZ 85016**

## ASSIGNMENT OF DEED OF TRUST

Loan No. 1335001370                                     T & B No.: 08-46504
Parcel No.

516532

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Deutsche Bank National Trust Company, as Indenture Trustee for New Century Alternative Mortgage Loan Trust 2006-ALT1** at the address of c/o ASC, 3476 Stateview Blvd, Fort Mill, SC 29715 all beneficial interest under that certain Deed of Trust dated **March 14, 2006** executed by **Christa K. Crowell and Charles J. Crowell, wife and husband** Trustor, **First American Title Insurance Company** Trustee, **Mortgage Electronic Registration Systems, Inc.**, as Beneficiary; and recorded on **September 13, 2007** as Instrument No./Docket-Page No. **070930222** of Official Records of **Cochise** County, AZ and legally describing the trust property as:

**Lot 78, CANYON DE FLORES, PHASE 2A, according to Book 14 of Maps, Page 85, records of Cochise County, Arizona.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Date : August 4, 2008

**Mortgage Electronic Registration Systems, Inc.**

By: Jennifer Hamlin
**Assistant Secretary for Mortgage Electronic Registration Systems, Inc.**

STATE OF  Arizona               )
                                )ss.
COUNTY OF Maricopa              )

OFFICIAL SEAL
ANN ARMSTRONG
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 15, 2010

On this 4th day of August, 2008, before me, the undersigned, a Notary Public for said State, personally appeared Jennifer Hamlin known to me to be the Assistant Secretary for Mortgage Electronic Registration Systems, Inc. of the above corporation, and acknowledge execution of the above instrument on behalf of the corporation.

My Commission Expires:                    _____
                                                 Notary Public